UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JONNA CORPORATION,

        Plaintiff,

    v.

CITY OF SUNNYVALE, CA,

        Defendant.

Case No. 17-CV-00956-LHK

**ORDER GRANTING CITY OF SUNNYVALE'S MOTION TO DISMISS**

Re: Dkt. No. 16

Plaintiff Jonna Corporation ("Plaintiff") sues Defendant City of Sunnyvale ("Defendant" or "the City") because the City refused to provide Plaintiff a license to collect construction and demolition debris in the City. Before the Court is the City's Motion to Dismiss. ECF No. 16 ("Mot."). Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS the City's Motion to Dismiss.

I. **BACKGROUND**

    A. **Factual Background**

In 1990, the City entered into an exclusive franchise agreement for the collection of solid waste in the City ("Exclusive Franchise Agreement") with Bay Counties Waste Services, Inc. ("Bay Counties"), formerly Specialty Solid Waste & Recycling, Inc., for a term of ten years. ECF

No. 1 ("Compl.") ¶ 21; *see also* ECF No. 17-1 at 39, Sunnyvale Ordinance No. 2771-04.[1]  That

Exclusive Franchise Agreement has been amended and extended a number of times, and now

extends through at least June 30, 2018.  ECF No. 17-3 at 13, Sunnyvale Ordinance No. 2949-11.

Under the Exclusive Franchise Agreement, Bay Counties is the sole collector of solid waste,

including recyclable materials and construction debris, in the City.  ECF No. 17-2 ("Franchise

Agmt.") at 18 ("City hereby extends its previous grant to Contractor of the exclusive franchise,

right and privilege to engage in the business of collecting and transporting Solid Waste generated

within the City"), 16 ("'[S]olid waste' means . . . Garbage, Rubbish, Construction Debris,

Yardwaste, and Recyclable Materials.").  The Sunnyvale Municipal Code forbids any party to

collect solid waste for a fee without a franchise or license.  Sunnyvale Mun. Code § 8.16.150 ("It

is unlawful for any person to engage in the business of collecting solid waste within the city, or to

haul the same through any street or public right-of-way in the city, unless such person has been

granted a franchise or license to do so by the city.").[2]  Bay Counties is the only entity that has been

awarded such a franchise or license.  Franchise Agmt. at 18.

Plaintiff is a California corporation based in Santa Clara County that "is in the business of

collecting discarded wood, metal, asphalt, concrete, and drywall from commercial construction

and demolition sites" ("construction and demolition debris").  Compl. ¶ 5.  On October 19, 2016,

Plaintiff applied to the City for a franchise or license to collect construction and demolition debris

under Sunnyvale Municipal Code § 8.16.090.  *Id.* ¶ 17; *see also* Sunnyvale Mun. Code § 8.16.090

("The city council shall provide for the collection and disposal of solid waste and recyclable

materials generated from residences within the city by the issuance of a franchise or license, or

[1] The Court refers to documents in this section, such as Sunnyvale Ordinance No. 2771-04, of
which Defendant requests judicial notice.  The Court discusses and grants judicial notice as to all
of these documents below in Section III.A.
[2] The Sunnyvale Municipal Code has exceptions to this solid waste franchise or license
requirement that do not apply here.  *See* Sunnyvale Mun. Code § 8.16.160.  Those exceptions
include: (1) self-hauling by residential householders, (2) gardeners removing materials incidental
to their work, (3) hauling of recyclable materials by recyclers, junk dealers, or businesses that buy
and market recyclable materials, (4) hauling of worn, spent, or defective equipment by a
commercial business, (5) hauling by a contractor who was hired for construction or demolition
work, or (6) businesses that dispose of secret, confidential or sensitive documents.  *Id.*

Case No. 17-CV-00956-LHK
ORDER GRANTING CITY OF SUNNYVALE'S MOTION TO DISMISS

franchises and licenses, to disposal service operators."). On November 7, 2016, the City denied Plaintiff's application for a franchise or license. Compl. ¶ 18. The City's denial letter stated that "[w]hile the Sunnyvale Municipal Code does allow for the possibility of the City issuing multiple license holders/franchisees, the City's current policy is to issue an exclusive franchise to a single disposal service operator. This franchise extends to collection of all solid waste, including [construction and demolition] material, as described in more detail in Chapter 8.16 of the Code." *Id.*

### B.   Procedural History

On February 24, 2017, Plaintiff filed the instant suit. *See* Compl. Plaintiff asserts two causes of action: declaratory relief and mandamus. However, the declaratory relief cause of action is based on the following theories of relief: (1) violation of the Takings Clause of the United States Constitution, (2) violation of the Substantive Due Process clause in the Fifth and Fourteenth Amendments to the United States Constitution, (3) violation of the Equal Protection clause in the Fourteenth Amendment of the United States Constitution and Article I, Section 7 of the California Constitution, (4) violation of the Commerce Clause of the United States Constitution, (5) the City's use of the wrong definition of "solid waste" under California law, and (6) violation of California Public Resources Code § 40059. *Id.* ¶¶ 26–31. Plaintiff's mandamus cause of action merely states that the City had a mandatory duty to issue a franchise or license to Plaintiff under Sunnyvale Municipal Code § 8.16.090, and thus the Court should compel the issuance of such a license. *Id.* ¶¶ 32–34.

This case was assigned to Magistrate Judge Howard Lloyd on February 27, 2017. ECF No. 4. On March 8, 2017, Plaintiff declined Magistrate Judge jurisdiction, ECF No. 7, and on March 9, 2017, the instant case was reassigned to the undersigned judge, ECF No. 9. On March 20, 2017, the City filed a motion to dismiss the instant suit that was noticed for hearing before Magistrate Judge Howard Lloyd. ECF No. 13.

On April 4, 2017, the City filed an amended motion to dismiss that was identical to the original motion to dismiss except that it was noticed for hearing before the undersigned judge.

ECF No. 16 ("Mot."). [3]  On April 18, 2017, Plaintiff filed an opposition to the City's amended motion, ECF No. 18 ("Opp'n"), and an "Appendix" of defined terms, ECF No. 18-1.  On April 25, 2017, the City filed a reply, ECF No. 19 ("Reply"), and an objection to Plaintiff's Appendix of defined terms, ECF No. 20. [4]

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look

---

[3] Accordingly, the City's first motion to dismiss, ECF No. 13, is DENIED as moot.
[4] Under Civil Local Rule 7-3(c), "[a]ny evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum."  Accordingly, because the City filed its objections to the Appendix in a separate document, the Court DENIES the City's objections.  However, the Court notes that Plaintiff's Appendix of defined terms contains a number of references to case law, and is akin to legal argument.  Plaintiff's opposition to the City's motion is 25 pages long, the full length allowed by Civil Local Rule 7-3(a).  Accordingly, the Court STRIKES Plaintiff's Appendix as argument in excess of the page limit set forth by the Civil Local Rules.

Case No. 17-CV-00956-LHK
ORDER GRANTING CITY OF SUNNYVALE'S MOTION TO DISMISS

beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).

### B. Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III. DISCUSSION

The City argues that Plaintiff has failed to adequately plead its declaratory relief and mandamus causes of action. The City also requests judicial notice of a number of documents.

The Court first addresses the City's request for judicial notice. The Court then addresses Plaintiff's declaratory relief and mandamus causes of action in turn.

### A.  Request for Judicial Notice

The Court first addresses the City's request for judicial notice. ECF No. 17. The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a filed complaint as a public record).

However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record . . . But a court may not take judicial notice of a fact that is subject to reasonable dispute.") (internal quotation marks omitted), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

The City requests judicial notice of the following legislative enactments:

- Sections 400, 1600, 1601, and 1602 of the City of Sunnyvale's Charter;

- Chapter 8.16 of the Sunnyvale Municipal Code;

- City of Sunnyvale Ordinance No. 2771-04, which is titled "An Ordinance of the City Council of the City of Sunnyvale Extending the Term of the Franchise with Bay Counties Waste Services, Inc. for the Collection of Solid Waste," as Adopted and Restated by Ordinance 2572-97;

- The January 11, 2005 Extended and Second Restated Agreement Between City of Sunnyvale and Bay Counties Waste Services, Inc. for Solid Waste Collection and

Recycling, which is an attachment to City of Sunnyvale Ordinance No. 2771-04;

- City of Sunnyvale Ordinance No. 2949-11, which is titled "An Ordinance of the City Council of the City of Sunnyvale Adopting the First Amendment to Extended and Second Restated Agreement Between the City of Sunnyvale and with Bay Counties Waste Services, Inc. for the Collection of Solid Waste and Recycling";

- The September 30, 2010 First Amendment to Extended and Second Restated Agreement Between City of Sunnyvale and Bay Counties Waste Services, Inc. for Solid Waste Collection and Recycling, which is an attachment to City of Sunnyvale Ordinance No. 2949-11.

The above documents are legislative enactments, ordinances, or regulations that are subject to judicial notice. *See Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1026 (9th Cir. 2009) (taking judicial notice of a local ordinance, a local regulation, and a local municipal code). Accordingly, the Court GRANTS the City's request for judicial notice of these documents.

The Court also requests judicial notice of the following public record documents:

- A December 14, 2004 City of Sunnyvale Staff Report to the City's Mayor and City Council about the extension of the Exclusive Franchise Agreement with Bay Counties;

- Minutes from the December 14, 2004 Sunnyvale City Council Public Hearings;

- A February 15, 2011 City of Sunnyvale Staff Report to the City's Mayor and City Council about the modification of the Exclusive Franchise Agreement with Bay Counties;

- April 13, 2011 Correction to Approved Minutes of the February 15, 2011 City Council Meeting;

The above documents are documents that are of public record, and thus are documents for which judicial notice is appropriate. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 959 n.10 (9th Cir. 2013) (taking judicial notice of opinion letters of California Division of Labor

Standards Enforcement); *Law v. City of Berkeley*, 2016 WL 4191645, at \*4 (N.D. Cal. Aug. 9, 2016) (taking judicial notice of city council minutes). Accordingly, the Court GRANTS the City's request for judicial notice of these documents.

**B. Declaratory Relief**

Plaintiff asserts two causes of action: declaratory relief and mandamus. However, the declaratory relief cause of action is based on the following six theories of relief: (1) violation of the Takings Clause of the United States Constitution, (2) violation of the Substantive Due Process clause in the Fifth and Fourteenth Amendments to the United States Constitution, (3) violation of the Equal Protection clause in the Fourteenth Amendment of the United States Constitution and Article I, Section 7 of the California Constitution, (4) violation of the Commerce Clause of the United States Constitution, (5) the City's use of the wrong definition of "solid waste" under California law, and (6) violation of California Public Resources Code § 40059. Compl. ¶¶ 26–31.

The Court first addresses Plaintiff's declaratory relief cause of action, which is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To fall within the Act's ambit, the "case of actual controversy" must be "'definite and concrete, touching the legal relations of parties having adverse legal interests,' . . . 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (alteration in original) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937)).

Defendant argues that Plaintiff's declaratory relief cause of action fails because the complaint fails to allege "any cognizable legal theory for declaratory relief." Mot. at 2. As noted above, Plaintiff's complaint asserts six legal theories in support of its declaratory relief cause of action. The Court addresses Plaintiff's constitutional legal theories first, in the following order:

8

(1) violation of the Takings Clause of the United States Constitution, (2) violation of the Substantive Due Process Clause in the Fifth and Fourteenth Amendments to the United States Constitution, (3) violation of the Equal Protection Clause in the Fourteenth Amendment of the United States Constitution and Article I, Section 7 of the California Constitution, and (4) violation of the Commerce Clause of the United States Constitution. The Court then addresses together Plaintiff's state law theories of relief: (1) the City's use of the wrong definition of "solid waste" under California law, and (2) violation of Public Resources Code § 40059.

### 1. Takings Clause

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. This clause applies to the states and their political subdivisions through the Fourteenth Amendment. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) ("The Takings Clause of the Fifth Amendment [is] applicable to the States through the Fourteenth Amendment." (citing *Chicago, B. & Q. R. Co. v. Chicago*, 166 U.S. 226, 239 (1897))). Although the prototypical case involves "physical invasions, occupations, or removals of property," in some cases, "overly assiduous government regulation can create an unconstitutional taking" of property. *Houlton Citizens' Coal. v. Town of Houlton*, 175 F.3d 178, 189–90 (1st Cir. 1999).

The first step in . . . [a] taking analys[i]s is to determine whether there is a property right that is protected by the Constitution." *Peterson v. U.S. Dep't of Interior*, 899 F.2d 799, 807 (9th Cir. 1990) (citation omitted). The *Peterson* court cites to *Bowen v. Public Agencies Opposed to Soc. Sec. Entrapment*, 477 U.S. 41 (1986), in which the United States Supreme Court held that the contractual right at issue in that case "did not rise to the level of 'property'" within the meaning of the Takings Clause because it "[could] not be viewed as conferring any sort of 'vested right.'" *Id.* at 54–55. "Without a property right, there could be no 'taking within the meaning of the Fifth Amendment.'" *Id.* at 55–56.

The Court notes that there is a question whether Plaintiff has adequately alleged that Plaintiff possessed property that is protected by the Takings Clause. *See Hagan v. United States*,

Case No. 17-CV-00956-LHK
ORDER GRANTING CITY OF SUNNYVALE'S MOTION TO DISMISS

2002 WL 338882, at \*8 n.10 (E.D. Pa. Mar. 2, 2002) (dismissing takings claim because "right to practice his profession as a Certified Public Accountant" was not cognizable property under the Takings Clause). The Court need not reach this issue here because, as the Court finds below, Plaintiff has failed to adequately plead exhaustion of state court remedies. However, if Plaintiff chooses to file an amended complaint, Plaintiff must adequately allege that Plaintiff possessed a property interest protected by the Takings Clause.

Assuming Plaintiff has established that a cognizable property interest is at issue, the determination whether a taking has occurred within the meaning of the Takings Clause depends on the particular circumstances of a case. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 326 (2002) ("[W]e have 'generally eschewed' any set formula for determining how far is too far, choosing instead to engage in 'essentially ad hoc, factual inquiries.'" (internal quotation marks omitted)). The United States Supreme Court has identified a number of factors courts may consider when determining whether a state action constitutes a taking of property: (1) "the character of the governmental action," i.e., whether it "can be characterized as a physical invasion by government," rather than arising from "some public program adjusting the benefits and burdens of economic life to promote the common good"; (2) "the economic impact of the regulation on the claimant"; and (3) "the extent to which the regulation has interfered with distinct investment-backed expectations." *Penn Cent. Transp. Co. v. N.Y. City*, 438 U.S. 104, 124 (1978).

The Court notes that there is a question whether Plaintiff has adequately alleged that any alleged taking was not merely incidental to the City's exercise of its police powers. *See Houlton*, 175 F.3d at 190 ("[C]ourts steadfastly have rejected the proposition that the grant of an exclusive contract for refuse collection constitutes a taking vis-à-vis other (competing) trash haulers"). The Court need not reach this issue here because, as the Court finds below, Plaintiff has failed to adequately plead exhaustion of state court remedies. However, if Plaintiff chooses to file an amended complaint, Plaintiff must adequately allege that any taking that occurred was not merely incidental to the City's exercise of its police powers.

Plaintiff argues that it has been subject to an unconstitutional taking because the City does not allow Plaintiff to collect construction and demolition debris for a service fee. Plaintiff asserts that this alleged taking was perpetrated by two state actions. First, Plaintiff argues that the City's denial of Plaintiff's application for a franchise or license was a taking. Second, Plaintiff argues that the California Supreme Court's decision in *Waste Management of the Desert v. Palm Springs Recycling Center*, 7 Cal. 4th 478 (1994), was a "judicial taking."

A cause of action for a "judicial taking" was recognized by the plurality in *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 560 U.S. 702 (2010). However, a majority of the United States Supreme Court did not hold that such a cause of action was available. *Id.* at 733–45. As a district court in this district has stated: "The contours and viability of the theory of so-called 'judicial takings'—where a court decision may be deemed to have effectively taken property rights from an individual—are unclear even in the courts of this country." *Eliahu v. Israel*, 2015 WL 981517, at *5 n.5 (N.D. Cal. Mar. 3, 2015), *aff'd sub nom. Eliahu v. State of Israel*, 659 F. App'x 451 (9th Cir. 2016).

In this case, the Court need not reach whether the Takings Clause protects against "judicial takings" because Plaintiff has failed to satisfy the prerequisites for a takings claim regardless of whether that taking was caused by the City or the California Supreme Court. To bring a claim based on the Takings Clause in federal court, "a plaintiff must establish two things: (1) the governmental entity has reached a final decision on the applicability of the regulation to the plaintiff's property; and (2) the plaintiff is unable to receive just compensation from the government." *San Remo Hotel v. City & Cty. of S.F.*, 145 F.3d 1095, 1102 (9th Cir. 1998).

The Court need not reach the first *San Remo* requirement because Plaintiff fails to satisfy the second *San Remo* requirement. Under the second *San Remo* requirement, if administrative procedures or a state court cause of action is available to obtain just compensation, a plaintiff must first pursue that avenue of relief. *See San Remo*, 145 F.3d at 1102 (requiring the plaintiff to first pursue state law inverse condemnation before bringing a federal cause of action). To avoid this requirement, the plaintiff must show that any state law avenues of relief are "inadequate." *Id.*

11

Here, the complaint contains no allegation that Plaintiff pursued compensation through state law avenues or that such avenues are inadequate.  There may be administrative procedures to appeal the license denial or a cause of action that can be brought in state court to obtain just compensation.  However, Plaintiff has failed to adequately allege that such avenues of relief have been exhausted or are inadequate.  Thus, Plaintiff has failed to satisfy the exhaustion requirement for a takings claim.  *See Smith v. Cty. of Santa Cruz*, 2014 WL 1118014, at \*5 (N.D. Cal. Mar. 19, 2014) (dismissing takings claim where the plaintiff failed to adequately allege that it had exhausted state law remedies).

Accordingly, the Court GRANTS the City's Motion to Dismiss Plaintiff's declaratory relief cause of action to the extent it relies on a Takings Clause theory of relief.  The Court grants leave to amend because Plaintiff may be able to allege facts that demonstrate that state remedies have been exhausted or are inadequate.

### 2.  Substantive Due Process

Plaintiff alleges that the City's denial of a license to collect construction and demolition debris was "arbitrary and capricious," and thus violates the requirements of substantive due process.  Plaintiff asserts violations of substantive due process under both the Fifth Amendment and Fourteenth Amendment.  *See* Compl. ¶¶ 26–27.  However, the Fifth Amendment's Due Process Clause only applies to the federal government.  *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).  Because Defendant is not a federal actor, the Court GRANTS the City's Motion to Dismiss Plaintiff's Fifth Amendment due process theory of relief with prejudice.  However, the Fourteenth Amendment has its own guarantee of due process against state action equivalent to the Fifth Amendment's provisions against the federal government.  *See Betts v. Brady*, 316 U.S. 455, 462 (1942*), overruled on other grounds by Gideon v. Wainwright*, 372 U.S. 335 (1963).  Thus, the Court analyzes Fourteenth Amendment substantive due process theory of relief.

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government."  *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).  Substantive due process is violated by "executive abuse of power . . . which shocks the conscience."  *Id.* at 846; *accord*

*Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010). "Substantive

due process cases typically apply strict scrutiny in the case of a fundamental right and rational

basis review in all other cases." *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008).

"When a fundamental right is recognized, substantive due process forbids the infringement of that

right 'at all, no matter what process is provided, unless the infringement is narrowly tailored to

serve a compelling state interest.'" *Id.* (quoting *Reno v. Flores*, 507 U.S. 292, 301–02 (1993)

(emphasis omitted)). Fundamental interests that warrant strict scrutiny include the right to marry

and the right to vote, among others. *See, e.g.*, *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S.

621, 627–28 (1969) (recognizing right to vote as fundamental right); *Loving v. Virginia*, 388 U.S.

1, 12 (1967) ("Marriage is one of the 'basic civil rights of man,' fundamental to our very existence

and survival").

　　　　In other cases not involving fundamental rights, where rational basis review applies, "the

Court determines whether governmental action is so arbitrary that a rational basis for the action

cannot even be conceived *post hoc*." *Witt*, 527 F.3d at 817. Indeed, "[w]hen executive action like

a discrete permitting decision is at issue, only 'egregious official conduct can be said to be

arbitrary in the constitutional sense': it must amount to an 'abuse of power' lacking any

'reasonable justification in the service of a legitimate governmental objective.'" *Shanks v.

Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833,

846 (1998)). Indeed, even "[o]fficial decisions that rest on an erroneous legal interpretation are

not necessarily constitutionally arbitrary." *Id.*

　　　　Plaintiff asserts that its "right to labor" has been violated here. Opp'n at 15. The United

States Supreme Court has held that the "liberty component of the Fourteenth Amendment's Due

Process Clause includes some generalized due process right to choose one's field of private

employment, but a right which is nevertheless subject to reasonable government regulation."

*Conn v. Gabbert*, 526 U.S. 286, 292 (1999). Cases identifying a violation of such a right "all deal

with a complete prohibition of the right to engage in a calling[.]" *Id.* However, even where the

"right to labor" has been violated, the right to choose one's chosen profession is not a

"fundamental right" within the meaning of the Due Process Clause, and thus is not subject to strict scrutiny. Therefore, this Court will apply rational basis review. *See Dittman v. California*, 191 F.3d 1020, 1030 (9th Cir. 1999) (applying rational basis review to claim based on "right to choose one's field of private employment").

Here, Plaintiff was denied a license to transport construction and demolition debris in the City. However, Plaintiff was not denied the right to be a hauler of construction and demolition debris in all instances. The complaint alleges that Plaintiff is based in Santa Clara County, not in Sunnyvale in particular. Indeed, Plaintiff fails to allege what portion of its business, if any, has been eliminated by the City's decision. Moreover, Plaintiff does not allege that it is precluded from hauling construction and demolition debris in other locations in Santa Clara County or elsewhere. *See Novin v. Fong*, 2014 WL 6956923, at *8 (N.D. Cal. Dec. 8, 2014) (denying substantive due process claim because the plaintiff "was not denied the right to be a car dealer in all instances, he was only denied a permit applicable to Novin's Property"). Accordingly, Plaintiff has failed to adequately allege that Plaintiff's right to engage in the construction and demolition waste collection profession was entirely eliminated, or to what extent it was even abridged, by the Exclusive Franchise Agreement. *See Conn*, 526 U.S. at 292 (holding that the right to labor only violates due process where there was a "complete prohibition of the right to engage in a calling").

Even if Plaintiff's "right to labor" was violated to some extent, under rational basis review, Plaintiff has failed to allege facts that show that the City's Exclusive Franchise Agreement and denial of Plaintiff's permit application are "so arbitrary that a rational basis for the action cannot even be conceived *post hoc*." *Witt*, 527 F.3d at 817. Indeed, as discussed below, the constitutional and statutory scheme and relevant case law show that the Exclusive Franchise Agreement and the permit denial have a rational basis.

The California Constitution provides that "[a] county or city may make and enforce within its limits all local, police, *sanitary*, and other ordinances and regulations not in conflict with general laws." Cal. Const. art. XI, § 7 (emphasis added). The Waste Management Act provides that the City has discretion to grant exclusive franchises as "public health, safety, and well-being

14

United States District Court
Northern District of California

so require." Cal. Pub. Res. Code § 40059(a)(2). The City has passed a municipal code with the purpose of "promot[ing] the public health, welfare and safety of the community by establishing reasonable regulations relating to the . . . collection and disposal of garbage, trash, rubbish, debris and other discarded matter, goods and material, and recyclable materials." Sunnyvale Mun. Code § 8.16.010. Pursuant to that purpose, the Sunnyvale Municipal Code requires the Sunnyvale City Council to "provide for the collection and disposal of solid waste and recyclable materials generated from residences within the city by the issuance of a franchise or license, or franchises and licenses, to disposal service operators." *Id.* § 8.16.090.

Under these provisions, the Sunnyvale City Council has entered an Exclusive Franchise Agreement with Bay Counties for the collection of solid waste, as codified in multiple ordinances. *See, e.g.*, ECF No. 17-1 at 39, Sunnyvale Ordinance No. 2771-04 (extending exclusive franchise agreement). The Sunnyvale City Council has expressly found that the adequate collection of solid waste is essential for "public health, safety and well-being" and that the Exclusive Franchise Agreement with Bay Counties is "in the best interest of City and its residents." Franchise Agmt. at 9.

Courts have explicitly described why a municipality's use of an exclusive franchise for waste collection is a rational choice that is neither arbitrary nor capricious. Exclusive franchise agreements for waste collection provide "economic advantages accruing from exclusivity [that] result in lower charges (for residential as opposed to commercial users) and increased efficiency in a number of programs (e.g., a curbside recycling program) that benefit refuse producers." *Waste Res. Techs. v. Dep't of Pub. Health*, 23 Cal. App. 4th 299, 310 (1994). Moreover, exclusive franchises are "rationally related to public health and environmental concerns, as it facilitates efficient regulation of potentially hazardous activities." *G. Fruge Junk Co. v. City of Oakland*, 637 F. Supp. 422, 425 (N.D. Cal. 1986) (denying substantive due process and equal protection challenges to exclusive franchise agreement). Indeed, the use of a single waste collector allows a municipality to "protect[] against the hazards of indiscriminate or unsafe waste disposal." *Waste Mgmt. of Alameda Cty., Inc. v. Biagini Waste Reduction Sys., Inc.*, 74 Cal. Rptr. 2d 676, 683

United States District Court
Northern District of California

(1998).  Without an exclusive franchise, a competitive "race to the bottom" with respect to waste collection may occur, in which competing waste collectors cut corners to the detriment of public health.  *Id.*

Additionally, more than one waste collector would mean more large trucks in the City, and "routine operation of large trucks in residential areas and in a municipality's central traffic arteries creates substantial safety and traffic concerns."  Phillip O'Connell & Terri Esparza, *The Golden Dustman in the Golden State: Exclusive Contracts for Solid Waste Collection and Disposal in California*, 32 URB. LAW. 281, 287 (2000).  These concerns are sufficiently important that at least one court has noted that "most local governments in California have opted for exclusive garbage collection arrangements."  *Waste Res. Techs.*, 23 Cal. App. 4th at 309 (noting "that the practice is indeed widespread").

Given these strong local concerns and the discretion provided to the City, Plaintiff has failed to allege that the City's decision to provide an exclusive franchise to Bay Counties, and thus to deny Plaintiff's license application, is arbitrary and capricious.  In fact, an exclusive franchise in waste collection is rationally related to "legitimate governmental objective[s]" such as efficient garbage collection, public health, and safety of residents.

Moreover, the City's letter denying Plaintiff's license application provides another rational reason why the license was denied.  In its permit application, Plaintiff asserted that over "70% of all [construction and demolition] discards collected by [Plaintiff] are put back into the stream of commerce."  Compl. at 21.  In response, the City noted that 78% of its construction and demolition materials are put back into the stream of commerce.  *Id.* at 24.  Thus, the fact that Plaintiff is not as efficient as the City's current waste collector is another rational basis for not allowing Plaintiff to collect construction and demolition debris within the City.

Accordingly, the Court GRANTS the City's Motion to Dismiss Plaintiff's declaratory relief cause of action to the extent it is based on substantive due process.  The Court provides leave to amend because Plaintiff may be able to plead facts that show arbitrary and capricious state action.

16

### 3. Equal Protection

Plaintiff alleges a violation of equal protection under the United States Constitution and the California Constitution. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).[5] Consequently, "[t]he equal protection clause forbids the establishment of laws which arbitrarily and unreasonably create dissimilar classifications of individuals when, looking to the purpose of those laws, such individuals are similarly situated. It also forbids unequal enforcement of valid laws, where such unequal enforcement is the product of improper motive." *Williams v. Field*, 416 F.2d 483, 486 (9th Cir. 1969) (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), and *People v. Harris*, 5 Cal. Rptr. 852 (Cal. App. Dep't Super. Ct. 1960)). However, "government actions that do not affect fundamental rights or liberty interests and do not involve suspect classifications will be upheld if they are rationally related to a legitimate state interest." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1209 (9th Cir. 2005) (as amended).

Even if a plaintiff does not allege that he or she is part of a class or group of persons that is suffering discrimination, the United States Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). However, such claims are "constrained" to avoid "provid[ing] a federal cause of action for review of almost every executive or administrative government decision." *Engquist v. Or.*

---

[5] The California Constitution states that "[a] person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws." Cal. Const. art. I, § 7. The Court considers Plaintiff's equal protection theory of relief under the United States Constitution and the California Constitution together because "equal protection under the California Constitution is 'substantially the equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution.'" *Kimco Staffing Servs., Inc. v. California*, 236 Cal. App. 4th 875, 884 (2015) (quoting *Manduley v. Superior Court*, 27 Cal. 4th 537, 571 (2002)) (internal quotation marks omitted).

*Dep't of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007). Thus, if a "class of one" equal protection claim is brought, the Plaintiff must plead with specificity the "similarly situated group" that is treated differently. *Andy's BP, Inc. v. City of San Jose*, 2013 WL 485657, at *5 (N.D. Cal. Feb. 6, 2013), *aff'd*, 605 F. App'x 617 (9th Cir. 2015) (citation omitted).

Whether Plaintiff asserts a traditional classification-based equal protection claim or a "class of one" equal protection claim, rational basis review applies here. Plaintiff only asserts a "right to labor," which is not a fundamental right or liberty interest, *see Conn*, 526 U.S. at 291–92 (holding that the "Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation"), and fails to allege the existence of any suspect classification. Accordingly, rational basis review applies. Plaintiff does not challenge the application of rational basis review.

Plaintiff's complaint "contends that it has been discriminated against in [the] City's grants of disposal service operator franchises and licenses in violation of the [E]qual [P]rotection [C]lause in the 14th Amendment of the United States Constitution and Article I, Section 7 of the California Constitution." Compl. ¶ 31. Plaintiff's complaint and opposition are not clear as to whether Plaintiff is pursuing a "class of one" claim or whether Plaintiff is pursuing a traditional classification-based equal protection claim. However, under either type of equal protection claim, Plaintiff has failed to adequately allege that (1) Plaintiff is similarly situated to a group that is treated differently, or (2) that the City's actions are not "rationally related to a legitimate state interest," *Palmdale*, 427 F.3d at 1209.

First, Plaintiff fails to allege that Plaintiff is similarly situated to any other group that has been awarded a franchise or license. *See Williams*, 416 F.2d at 485–86 (requiring the plaintiff to be similarly situated with others seeking the same benefit). The only party that has been awarded a franchise or license by the City is Bay Counties, the exclusive franchisee. However, Plaintiff's complaint does not allege that Plaintiff and Bay Counties are similarly situated. Indeed, they are in quite different positions because Bay Counties collects *all* of the solid waste in the City, while

Plaintiff solely wants to collect some construction and demolition debris. Moreover, Plaintiff and Bay Counties are also not similarly situated because, as discussed above, Plaintiff asserted that it returns over 70% of all construction and demolition debris to interstate commerce while the City through Bay Counties returns 78% of construction and demolition debris to interstate commerce. Compl. at 21. Therefore, Plaintiff has failed to adequately allege that he was treated differently from a similarly situated applicant.

Second, Plaintiff has not adequately alleged that the government's denial of its franchise or license application is not "rationally related to a legitimate state interest." *Palmdale*, 427 F.3d at 1209. Under rational basis review, Plaintiff's allegations are insufficient. As discussed in depth in the substantive due process section above, the grant of an exclusive franchise and the denial of Plaintiff's license application are rationally related to the City's interest in maintaining the safe and efficient provision of solid waste collection services. *See Waste Res. Techs.*, 23 Cal. App. 4th at 310 (holding that exclusive franchises provide "economic advantages accruing from exclusivity [that] result in lower charges . . . and increased efficiency"); *G. Fruge Junk Co.*, 637 F. Supp. at 425 (denying equal protection claim because exclusive franchises are "rationally related to public health and environmental concerns, as it facilitates efficient regulation of potentially hazardous activities."). Plaintiff's complaint does not allege any facts that show that these benefits of an exclusive franchise agreement are not rationally related to maintaining an exclusive franchise in waste collection. Accordingly, Plaintiff has failed to allege that the City had no rational basis to deny Plaintiff's franchise or license application. *See Palmdale*, 427 F.3d at 1208–11 (granting motion to dismiss on equal protection claim after considering rational bases to uphold the law).

In Plaintiff's opposition, Plaintiff argues that an equal protection violation occurred based on *Ex parte Lyons*, 27 Cal. App. 2d 182 (1938). In *Lyons*, the California Court of Appeal held that there was no rational basis for an Orange County ordinance that precluded the transportation of garbage generated in other counties into Orange County. *Id.* at 188. The *Lyons* court stated that, "ton for ton," there was no "more risk to public health in the handling or transporting on public roads of garbage originating in one locality than that originating in another." *Id.* at 189.

United States District Court
Northern District of California

Moreover, even though 29 tons of waste were generated within Orange County and 200 tons of waste were transported into Orange County at the time of the ordinance's enactment, the limitation on the *amount* of waste being transported into the County did not provide a rational basis because it did not place any limits on the amount of waste within Orange County itself.[6]  *Id.*

*Lyons* is inapposite.  *Lyons* involves the question of whether it is discriminatory to entirely preclude the transportation of waste from outside a county into that county because the waste from either location is indistinguishable.  Here, the question is whether there was a rational basis to establish an exclusive franchise in the collection of solid waste, and thus deny Plaintiff's application for a franchise or license to collect construction and demolition debris.  These cases are only similar in that they involve waste and an equal protection analysis.  *Lyons* does not show that Plaintiff was similarly situated with any other group or individuals or that the City lacks a rational basis.

Based on *Lyons*, Plaintiff argues that "[j]ust as *Lyons* found no justifiable distinction between the garbage of two counties, there is likewise no justification in this case of treating the mixed [construction and demolition debris] collected by Plaintiff and the garbage collected by the City's franchisee in the same way."  Opp'n at 22.  However, the Equal Protection Clause does not protect against things that are *different* being treated the *same*.  As noted above, equal protection only provides a means for relief if individuals are similarly situated, but are irrationally treated differently.  *See Williams*, 416 F.2d at 485–86 (requiring the plaintiff to be similarly situated with others seeking the same benefit).

Therefore, the Court GRANTS the City's Motion to Dismiss Plaintiff's declaratory relief cause of action to the extent it is based on the Equal Protection Clauses of the federal and California constitutions.  The Court provides leave to amend because Plaintiff may be able to plead facts that state an equal protection claim.

### 4.     Dormant Commerce Clause

---

[6] The Court need not reach whether the *Lyons* decision was correctly decided.

Case No. 17-CV-00956-LHK
ORDER GRANTING CITY OF SUNNYVALE'S MOTION TO DISMISS

Plaintiff also argues that the Exclusive Franchise Agreement violates the dormant Commerce Clause. The Commerce Clause of the United States Constitution provides: "The Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. Const. Art. I, § 8, cl. 3. The United States Supreme Court has interpreted the Commerce Clause "to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994). "Courts have sometimes referred to this doctrine as the 'dormant Commerce Clause.'" *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010) (quoting *United Haulers Ass'n v. Oneida–Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007)). Under the dormant Commerce Clause, a state may not impede the flow of goods between the states and engage in "economic protectionism," which includes enacting regulations "designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. v. Limbach*, 486 U.S. 269, 273 (1988). However, the dormant Commerce Clause does not protect the particular structure or methods of operation in a retail market, nor does it protect any particular interstate business. *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127–28 (1978) ("[T]he [Commerce] Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations.").

Two levels of scrutiny exist for analyzing statutes challenged under the dormant Commerce Clause. *Maine v. Taylor*, 477 U.S. 131, 138 (1986) ("[T]his Court has distinguished between state statutes that burden interstate transactions only incidentally, and those that affirmatively discriminate against such transactions."). The higher level of scrutiny applies to a statute that "discriminate[s] against interstate commerce 'either on its face or in practical effect.'" *Id.* (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)). For the purposes of the dormant Commerce Clause analysis, "discrimination" means "differential treatment of instate and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste*, 511 U.S. at 99. The "differential treatment" must be as between persons or entities who are "similarly situated." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298–99 (1997). A court must analyze such

a statute under the "strictest scrutiny." *Hughes*, 441 U.S. at 337. That is, such a statute is unconstitutional unless it "'serves a legitimate local purpose,' and . . . this purpose could not be served as well by available nondiscriminatory means." *Maine*, 477 U.S. at 138 (quoting *Hughes*, 441 U.S. at 336). The party challenging the statute bears the burden of showing discrimination. *Hughes*, 441 U.S. at 336 ("The burden to show discrimination rests on the party challenging the validity of the statute.").

A state law which does not discriminate against interstate commerce, but still "burden[s] interstate transactions [] incidentally" may still violate the dormant Commerce Clause if the law fails the *Pike* balancing test. *Maine*, 477 U.S. at 138; *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970) (setting forth the *Pike* balancing test). Under the *Pike* balancing test, a law that applies evenhandedly to in-state and out-of-state entities and only incidentally burdens interstate commerce is valid unless it burdens commerce in a way that is "clearly excessive in relation to the putative local benefits" to be derived therefrom. *Pike*, 397 U.S. at 142. The party challenging the constitutionality of the statute has the burden of showing that the statute fails the *Pike* balancing test. *See Kleenwell Biohazard Waste & Gen. Ecology Consultants v. Nelson*, 48 F.3d 391, 399 (9th Cir. 1995) (placing the burden on the "party challenging the regulation").

The Court first addresses whether Plaintiff has adequately alleged discrimination against interstate commerce, and then discusses whether Plaintiff has adequately alleged a burden on interstate commerce that survives the *Pike* balancing test.

### a. Discrimination Against Interstate Commerce

Plaintiff alleges that the "City's policy of granting an exclusive franchise that includes recyclable materials that have a market value and are sold within interstate commerce, interferes with interstate commerce excessively in relation to the putative local benefits to [the] City." Compl. ¶ 25. Plaintiff's allegation does not identify what market in interstate commerce has been burdened or how it has been burdened.

Regardless, in Plaintiff's opposition, Plaintiff argues that the Exclusive Franchise Agreement is a "flow control ordinance" proscribed under *C & A Carbone v. Town of Clarkstown*,

22

511 U.S. 383 (1994).  In *Carbone*, the United States Supreme Court addressed whether the dormant Commerce Clause precluded a municipal "flow control ordinance" that required all recyclables, whether those recyclables were to remain in-state or sent out-of-state, to be processed at a single designated local transfer station operated by a local company.  *Id.* at 389–90.  The transfer station charged a "tipping fee" that caused the use of the station to be more expensive than other in-state and out-of-state transfer stations.  *Id.*  Moreover, the processing of the recyclables at the transfer station could only be done by a favored local operator.  *Id.*

The *Carbone* court compared this flow control ordinance to *South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82 (1984), in which the United States Supreme Court struck down "an Alaska regulation that required all Alaska timber to be processed within the State prior to export."  *Id.* at 84.  The *Carbone* court noted that "[t]he essential vice in laws of this sort is that they bar the import of the processing service" and thus, "hoard a local resource—be it meat, shrimp, or milk—for the benefit of local businesses that treat it."  *Carbone*, 511 U.S. at 392.  The *Carbone* court held that "[t]he flow control ordinance has the same design and effect.  It hoards solid waste, and the demand to get rid of it, for the benefit of the preferred processing facility."  *Id.*

After *Carbone*, there have been multiple challenges to exclusive franchise agreements for the hauling or collection of waste, like the Exclusive Franchise Agreement in this case.  However, courts have consistently rejected such challenges.  *See Houlton*, 175 F.3d 178 (upholding exclusive franchise agreement for waste hauling); *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272 (2d Cir. 1995) (same); *S. Waste Sys., LLC. v. City of Delray Beach*, 420 F.3d 1288, 1290 (11th Cir. 2005) (same); *Biagini*, 63 Cal. App. 4th 1488 (same); *Barker Sanitation v. City of Neb. City, Neb.*, 2003 WL 24275215, at *8–12 (D. Neb. Nov. 4, 2003), *aff'd*, 102 F. App'x 514 (8th Cir. 2004) (same).

These cases point out that unlike *Carbone*, an exclusive franchise agreement with a single provider to collect a municipality's waste does not actually limit or direct the flow of waste in interstate commerce.  *See Biagini*, 63 Cal. App. 4th at 1496–97 (holding that the franchise agreement for collecting waste was "not a flow control ordinance of the nature condemned

Case No. 17-CV-00956-LHK
ORDER GRANTING CITY OF SUNNYVALE'S MOTION TO DISMISS

in *Carbone*").  Here, although Plaintiff argues that an exclusive agreement to haul waste is a "flow control ordinance" like in *Carbone*, the Exclusive Franchise Agreement here does not actually direct how the waste or recyclable materials will move in interstate commerce.  Plaintiff's complaint contains no allegation that out-of-state processors of waste or companies that wish to purchase recyclables are prevented from offering their services or face higher costs or burdens as a result of the Exclusive Franchise Agreement with Plaintiff.  Indeed, once waste is collected by Bay Counties, Plaintiff does not allege that there is any limitation on Bay Counties' ability to sell or process the waste through out-of-state businesses.  Thus, Plaintiff has not adequately alleged that the arrangement here is a "flow control ordinance" of the type discussed in *Carbone*.

Although the Exclusive Franchise Agreement does not limit the flow of waste or recyclable materials in interstate commerce, the Exclusive Franchise Agreement does prevent out-of-state (as well as other in-state) waste collectors from collecting solid waste in the City. However, such a contractual arrangement does not necessarily implicate the dormant Commerce Clause.  In *Houlton*, the First Circuit held that "if local legislation leaves all comers with equal access to the local market, it does not offend the dormant Commerce Clause."  *Houlton*, 175 F.3d at 188 (citing *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 94 (1987)).  The *Houlton* court concluded that if in-state and out-of-state waste collectors "are allowed to compete freely on a level playing field [for the exclusive franchise], there is no cause for constitutional concern."  *Id.*; *Delray Beach*, 420 F.3d at 1291 ("The Commerce Clause forbids only the promotion of local economic interests over out-of-state interests.  It does not forbid exclusive franchise agreements whereby a city selects one waste hauler to provide basic waste collection services to its citizens, so long as the bidding process is open to all, and there is no requirement that local interests be favored in the performance of the contract."); *see also Biagini*, 63 Cal. App. 4th at 1497 ("The ordinance also treats identically local and out-of-state garbage haulers . . . both may compete to obtain the exclusive franchise presently awarded to respondent.").

Here, Plaintiff's complaint contains no allegation that out-of-state providers were barred or disadvantaged in the City's process of selecting the exclusive solid waste collection provider for

Case No. 17-CV-00956-LHK
ORDER GRANTING CITY OF SUNNYVALE'S MOTION TO DISMISS

United States District Court
Northern District of California

the City. Indeed, the Exclusive Franchise Agreement itself states that "[t]he City Council has evaluated all proposals submitted and has determined that Contractor has proposed to provide such services in a manner and on the terms which are in the best interest of City and its residents, taking into account the qualifications and experience of Contractor in the collection of solid waste and the cost of providing such services." Franchise Agmt. at 9. Moreover, to the extent that parties such as Plaintiff are precluded from collecting solid waste in addition to the exclusive franchisee for the City, that limitation is placed on in-state and out-of-state parties equally, and thus does not discriminate against out-of-state businesses. Thus, Plaintiff's complaint does not adequately allege that the process of awarding the franchise was discriminatory against out-of-state interests or that it burdens interstate commerce.

Thus, because Plaintiff has not alleged that the Exclusive Franchise Agreement discriminates—or even burdens—interstate commerce, heightened scrutiny under the dormant Commerce Clause does not apply.

### b.    The *Pike* Balancing Test

The Court next addresses whether Plaintiff has stated a claim for violation of the dormant Commerce Clause under the balancing test set forth in *Pike*. Under *Pike*, a law that applies evenhandedly to in-state and out-of-state entities and only incidentally burdens interstate commerce is valid unless it burdens commerce in a way that is "clearly excessive in relation to the putative local benefits" to be derived therefrom. *Pike*, 397 U.S. at 142. Plaintiff has the burden of showing that the burdens on commerce are "clearly excessive." *Id.*

Plaintiff has failed to satisfy its burden, even at the motion to dismiss stage. As noted above, Plaintiff's complaint alleges that the "City's policy of granting an exclusive franchise that includes recyclable materials that have a market value and are sold within interstate commerce, interferes with interstate commerce excessively in relation to the putative local benefits to [the] City." Compl. ¶ 25. This conclusory allegation does not indicate what incidental burdens are placed on interstate commerce. As discussed in the discrimination section above, Plaintiff's complaint fails to allege a burden on out-of-state waste processors or purchasers of recyclables.

25

Further, Plaintiff's complaint fails to allege any burden on out-of-state waste collectors because the complaint contains no allegation that out-of-state interests cannot compete on an equal playing field with in-state waste collectors for the exclusive franchise. *See Green Sols. Recycling, LLC v. Refuse, Inc.*, 2017 WL 1136664, at *3 (D. Nev. Mar. 27, 2017) (dismissing dormant Commerce Clause claim where the plaintiff failed to allege "how the Agreement burdens interstate commerce").

In Plaintiff's opposition, Plaintiff does not identify a burden to interstate commerce, but solely argues that an exclusive franchise "has no putative local benefit except possibly lower garbage collection rates," which Plaintiff asserts is "simple economic protectionism." Opp'n at 24. As a result, Plaintiff argues that there is "almost a *per se* invalidity of the ordinance." *Id.* However, as discussed in the substantive due process and equal protection sections above, the exclusive franchise is granted not only for inexpensive garbage collection services for local residents, but for the purpose of guaranteeing public health and safety as well as the efficient collection of solid waste. *See Biagini*, 63 Cal. App. 4th at 1499 ("The regulation of solid waste collection by granting an exclusive franchise right is a proper exercise of the municipality's police power, and serves an important public interest by protecting against the hazards of indiscriminate or unsafe waste disposal."). Thus, because Plaintiff has failed to allege a burden to interstate commerce, and public health and safety rationales support the exclusive franchise, Plaintiff has failed to allege a violation of the dormant Commerce Clause. *See Houlton*, 175 F.3d at 189 ("In light of the strong local interest in efficient and effective waste management and the virtually invisible burden that the Town's scheme places on interstate commerce, Houlton passes [the *Pike*] test with flying colors.").

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's declaratory relief cause of action to the extent it is based on the dormant Commerce Clause. The Court provides leave to amend because Plaintiff may be able to plead facts that show a burden to interstate commerce.

### 5. Remaining State Law Theories

26

Plaintiff's remaining theories of relief are based on state law. Plaintiff argues two state law theories of relief, namely: (1) that the City uses the wrong definition of solid waste under California law, and (2) that the City violated California Public Resources Code § 40059.

"[T]he Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction." *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005). Before declaratory relief may be granted, federal subject matter jurisdiction requirements must be satisfied. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (requiring independent subject matter jurisdiction on a declaratory relief cause of action).

A federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Conversely, a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Albingia Versicherungs A.G. v. Schenker Int'l, Inc.*, 344 F.3d 931, 937–38 (9th Cir. 2003) (as amended) (holding that Section 1367(c) grants federal courts the discretion to dismiss state law claims when all federal claims have been dismissed). In considering whether to retain supplemental jurisdiction, a court should consider factors such as "economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citations and internal quotation marks omitted). However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1553 n.4 (9th Cir. 1994) (emphasis omitted), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

Here, the factors of economy, convenience, fairness, and comity support dismissal of Plaintiff's remaining state law theories of relief. This case is still at the pleading stage, and no discovery has taken place. Federal judicial resources are conserved by dismissing the state law theories of relief at this stage. The Court finds that dismissal promotes comity as it enables

Case No. 17-CV-00956-LHK
ORDER GRANTING CITY OF SUNNYVALE'S MOTION TO DISMISS

United States District Court
Northern District of California

California courts to interpret questions of state law.  Moreover, the fact that this case is brought under the federal declaratory judgment act does not affect this result.  *See Anbar v. Deutsche Bank Nat. Trust Co.*, 2013 WL 5937274, at *3 (S.D. Cal. Nov. 4, 2013) (declining supplemental jurisdiction on declaratory judgment cause of action).

Under similar circumstances, in *Houlton*, after the First Circuit found that the defendant's exclusive franchise agreement was not prohibited under the Takings Clause or the dormant Commerce Clause, the First Circuit discussed a claim that the exclusive franchise agreement was invalid under the town charter.  *Houlton*, 175 F.3d at 192.  The First Circuit noted that the district court "should not have ventured to adjudicate the town charter claim," and that declining supplemental jurisdiction was the "option of choice."  *Id.*  The Court finds that similar logic applies to Plaintiff's state law theories of relief here.  For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law theories of relief.

Accordingly, the Court GRANTS the City's Motion to Dismiss Plaintiff's declaratory relief cause of action to the extent it is based on Plaintiff's state law theories of relief.  The Court provides leave to amend because Plaintiff may be able to plead a federal theory of relief that warrants the Court's exercise of supplemental jurisdiction.

### B.      Mandamus

Plaintiff asserts a claim for mandamus based on state law.  Plaintiff asserts that the City had a mandatory duty to issue Plaintiff a license under Sunnyvale Municipal Code § 8.16.090.  The Court need not reach this issue because the Court declines supplemental jurisdiction over this state law claim for the same reason the Court declines supplemental jurisdiction over Plaintiff's declaratory relief cause of action's state law theories of relief.  The factors of economy, convenience, fairness, and comity support dismissal of Plaintiff's mandamus cause of action.  *See Exec. Software*, 24 F.3d at 1553 n.4 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.").

Accordingly, the Court GRANTS the City's Motion to Dismiss Plaintiff's mandamus

cause of action.  The Court provides leave to amend because Plaintiff may be able to plead a federal theory of relief that warrants the Court's exercise of supplemental jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the City's Motion to Dismiss.  Should Plaintiffs elect to file an amended complaint curing the deficiencies identified herein, Plaintiffs shall do so within 30 days.  Failure to file an amended complaint within 30 days or failure to cure the deficiencies identified in this Order will result in dismissal with prejudice of the claims dismissed in this Order.  Plaintiffs may not add new causes of actions, new theories of relief under its declaratory relief cause of action, or new parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: June 16, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 17-CV-00956-LHK
ORDER GRANTING CITY OF SUNNYVALE'S MOTION TO DISMISS