UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JONNA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SUNNYVALE, CA,<br><br>Defendant. | Case No. 17-CV-00956-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 34 |

Plaintiff Jonna Corporation ("Plaintiff"), doing business as Premier Recycling, sues Defendant City of Sunnyvale ("the City") because the City refused to provide Plaintiff a license to collect construction and demolition debris in the City. Before the Court is the City's Motion to Dismiss the First Amended Complaint. ECF No. 34 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS the City's Motion to Dismiss the First Amended Complaint.

## I.      BACKGROUND

### A.      Factual Background

In 1991, the City entered into an exclusive franchise agreement for the collection of solid waste in the City ("Exclusive Franchise Agreement") with Bay Counties Waste Services, Inc.

("Bay Counties"), formerly Specialty Solid Waste & Recycling, Inc., for a term of ten years. First Amended Complaint ("FAC"), ECF No. 33 at 9; ECF No. 35-1 at 16; Sunnyvale Ordinance No. 2771-04.[1] The Exclusive Franchise Agreement has been amended and extended a number of times, and now extends through at least June 30, 2021. Sunnyvale Ordinance No. 2949-11. Under the Exclusive Franchise Agreement, Bay Counties is the sole collector of solid waste, including recyclable materials and construction debris, in the City. FAC at 9. The Sunnyvale Municipal Code forbids any party from collecting solid waste for a fee without a franchise or license. Sunnyvale Mun. Code § 8.16.150 ("It is unlawful for any person to engage in the business of collecting solid waste within the city, or to haul the same through any street or public right-of-way in the city, unless such person has been granted a franchise or license to do so by the city."). Bay Counties is the only entity that has been awarded such a franchise or license. FAC at 9.

Plaintiff is a California corporation based in Santa Clara County that "is in the business of collecting discarded wood, metal, asphalt, concrete, and drywall from commercial construction and demolition sites" ("construction and demolition debris"). FAC ¶¶ 3, 5. On October 19, 2016, Plaintiff applied to the City for a franchise or license to collect construction and demolition debris under Sunnyvale Municipal Code § 8.16.090. *Id.* ¶ 17; *see also* Sunnyvale Mun. Code § 8.16.090 ("The city council shall provide for the collection and disposal of solid waste and recyclable materials generated from residences within the city by the issuance of a franchise or license, or franchises and licenses, to disposal service operators."). On November 7, 2016, the City denied Plaintiff's application for a franchise or license. FAC ¶ 18. The City's denial letter stated that "[w]hile the Sunnyvale Municipal Code does allow for the possibility of the City issuing multiple license holders/franchisees, the City's current policy is to issue an exclusive franchise to a single disposal service operator. This franchise extends to collection of all solid waste, including [construction and demolition] material, as described in more detail in Chapter 8.16 of the Code."

---

[1] In this section, the Court refers to documents of which the City requests judicial notice. In Section III below, the Court discusses and grants judicial notice of all of these documents except those to which Plaintiff objected.

*Id.*

**B.     Procedural History**

On February 24, 2017, Plaintiff filed the instant suit.  *See* ECF No. 1.  Plaintiff asserted two causes of action: declaratory relief and mandamus.  The declaratory relief cause of action was based on the following theories: (1) violation of the Takings Clause of the U.S. Constitution; (2) violation of the guarantee of substantive due process of Fifth and Fourteenth Amendments to the U.S. Constitution; (3) violation of the Equal Protection Clause in the Fourteenth Amendment of the U.S. Constitution and Article I, Section 7 of the California Constitution; (4) violation of the Commerce Clause of the U.S. Constitution; (5) the City's use of the wrong definition of "solid waste" under California law; and (6) violation of California Public Resources Code § 40059.  *Id.* ¶¶ 26-31.  Plaintiff's mandamus cause of action stated that the City had a mandatory duty to issue a franchise or license to Plaintiff under Sunnyvale Municipal Code § 8.16.090, and thus the Court should compel the issuance of such a license.  *Id.* ¶¶ 32-34.

On March 4, 2017, the City filed a motion to dismiss the complaint.  ECF No. 16.  On April 18, 2017, Plaintiff filed an opposition.  ECF No. 18.  On April 25, 2017, the City filed a reply.  ECF No. 19.  On June 16, 2017, the Court granted the City's motion to dismiss after finding that Plaintiff had failed to satisfy the takings exhaustion requirement and had failed to allege that the City's exclusive franchise policy was arbitrary and capricious, as substantive due process would require.  ECF No. 29 at 12-16.  The Court also dismissed Plaintiff's equal protection theory based on Plaintiff's failure to plead that it was similarly situated to any other group that had been awarded a franchise or license and on Plaintiff's failure to adequately allege that the City's exclusive franchise policy was irrational.  *Id.* at 16-20.  The Court dismissed Plaintiff's dormant Commerce Clause theory because Plaintiff failed to adequately plead that the exclusive franchise policy discriminated against out-of-state interests or that it burdened interstate commerce.  *Id.* at 25-26.  Because the Court had dismissed all of the bases for declaratory relief over which it had original jurisdiction, the Court declined to exercise supplemental jurisdiction over Plaintiff's remaining state law theories for Plaintiff's declaratory relief cause of action and

3

Plaintiff's mandamus cause of action, which was based on state law. *Id.* at 26-29.

The Court provided Plaintiff leave to amend its complaint within thirty days. ECF No. 29 at 29. The Court cautioned that "[f]ailure to file an amended complaint within 30 days or failure to cure the deficiencies identified in this Order will result in dismissal with prejudice of the claims dismissed in this Order." *Id.*

Plaintiff filed its First Amended Complaint on July 16, 2017. In the FAC, Plaintiff alleged a declaratory relief cause of action premised on the Takings Clause of the U.S. Constitution and the Fourteenth Amendment's guarantee of substantive due process. Plaintiff abandoned its Equal Protection Clause and Commerce Clause theories and also abandoned the mandamus cause of action.

The City filed a motion to dismiss on July 28, 2017. *See* Mot. The City also filed a request for judicial notice. ECF No. 35 ("RJN"). On August 11, 2017, Plaintiff filed an opposition and objections to the City's RJN. ECF No. 37 ("Opp."). In its opposition, Plaintiff withdrew its Takings Clause theory. Opp. at 2. The City replied on August 18, 2017. ECF No. 38 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

4

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the Court required to assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

**B.     Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III.     REQUEST FOR JUDICIAL NOTICE**

The City has requested judicial notice of a range of legislative enactments including sections of the Sunnyvale Municipal Code, public record documents, and correspondence. ECF No. 35. The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources

1    whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Public records,

2    including judgments and other publicly filed documents, are proper subjects of judicial notice.

3    *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).  However, to the extent any

4    facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not

5    take judicial notice of those facts.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.

6    2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.

7    2002).

8            With the exception of the November 7, 2016 letter, the City previously requested judicial

9    notice of these documents in connection with its first round motion to dismiss.  ECF No. 17 at 1-3.

10   Plaintiff did not object to the City's request for judicial notice at that time.  *See* ECF No. 18.  In its

11   Order on June 16, 2017, the Court granted the City's request for judicial notice of these

12   documents.  ECF No. 29 at 6-8.  In its June 16, 2017 Order, the Court concluded that these

13   "documents are legislative enactments, ordinances, or regulations that are subject to judicial

14   notice," or "are of public record, and thus are documents for which judicial notice is appropriate."

15   ECF No. 29 at 7 (citing *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011,

16   1026 (9th Cir. 2009) (taking judicial notice of a local ordinance, a local regulation, and a local

17   municipal code); *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 959 n.10 (9th Cir. 2013)

18   (taking judicial notice of opinion letters of California Division of Labor Standards Enforcement);

19   and *Law v. City of Berkeley*, No. 15-cv-05343-JSC, 2016 WL 4191645, at \*4 (N.D. Cal. Aug. 9,

20   2016) (taking judicial notice of city council minutes)).

21          The November 7, 2016 letter, in which the City denied Plaintiff's application for a license

22   to collect construction and demolition debris, was referenced on page 9 of the FAC.  *See* FAC at

23   9; RJN Exh. J.  A court may consider documents that were referenced but not attached to the

24   complaint for purposes of deciding a Rule 12(b)( 6) motion.  *Davis v. HSBC Bank Nev., NS.*, 691

25   F .3d 1152, 1159-1160 (9th Cir. 2012); *Branch v. Tunnell*, 14 F.3d 449,454 (9th Cir. 1994).

26          Plaintiff now objects to the City's request for judicial notice of two documents: the January

27   11, 2005 Extended and Second Restated Agreement ("the Agreement"), and the February 15, 2011

28
                                                            6

Staff Report ("the Report"). Opp. at 15. Plaintiff argues that the Court cannot take judicial notice of the recitals in the Agreement because the facts in the recitals are themselves disputed. Opp. at 16. It appears to make a similar argument as to the Report. Accordingly, the Court has not considered the Agreement or the Report in ruling on the instant motion. The City's request for judicial notice of the other documents is GRANTED.

## IV. DISCUSSION

In its Opposition to the instant motion, Plaintiff stated, "In light of *PVM Redwood Co. v. United States*, 686 F.2d 1327 (9th Cir. 1982), which had not been cited previously by the City or the Court, and of which [Plaintiff] was unaware, [Plaintiff] must withdraw its Takings Clause claim under [Federal Rule of Civil Procedure] 11." Opp. at 1-2. Plaintiff further stated that "[Plaintiff] has not renewed, and has therefore withdrawn, its previous claims under the Equal Protection Clause, the Commerce Clause, and its supplemental mandamus claim." *Id.* at 2. Thus, Plaintiff stated that its Opposition "tries to clarify [Plaintiff]'s theory of this case on its substantive due process claim and related supplemental state law claim." *Id.* Plaintiff's FAC consists of one declaratory relief cause of action. The Court addresses Plaintiff's substantive due process theory, then Plaintiff's state law theories, of Plaintiff's declaratory relief cause of action.

## A. Substantive Due Process

Because Plaintiff's theory of its declaratory relief cause of action has shifted between the original complaint and the FAC and again between the FAC and Plaintiff's Opposition, the Court first describes Plaintiff's substantive due process theory of its declaratory relief cause of action. The Court then analyzes Plaintiff's cause of action.

### 1. Plaintiff's Theory of the Alleged Substantive Due Process Violation

Plaintiff's substantive due process theory hinges on the California Supreme Court's interpretation of the California Integrated Waste Management Act of 1989 ("the Act"). Accordingly, the Court first explains the statutory and legal background of Plaintiff's argument. The Act permits cities to grant exclusive franchises for solid waste handling services. CAL. PUB. RES. CODE § 40059(a)(2). "Solid waste handling" means "the collection, transportation, storage,

7

transfer, or processing of solid wastes." *Id.* § 40195. As relevant here, the Act defines "solid waste" to include "all putrescible and nonputrescible solid, semisolid, and liquid wastes, including garbage, trash, refuse, paper, rubbish, ashes, industrial wastes, [and] demolition and construction wastes." *Id.* § 40191(a). The Act does not separately define "waste," which is used in the broader definition of "solid waste."

In 1994, the California Supreme Court interpreted the term "waste" as used in the Act in *Waste Management of the Desert, Inc. v. Palm Springs Recycling Center, Inc.*, 869 P.2d 440 (Cal. 1994). In *Waste Management*, the city of Rancho Mirage had awarded the plaintiff an exclusive franchise for collecting "waste matter, garbage, and rubbish." *Id.* at 441. The plaintiff sought an order enjoining the defendant from collecting recyclable materials from commercial customers. *Id.* The question that the California Supreme Court addressed was "whether property with a market value to its owner—for example, a recyclable material—is 'waste' within the scope of the Act and its exclusive franchise provision." *Id.* at 442. The California Supreme Court held that such "property is not 'waste' until it is discarded." *Id.*

"This construction encompasses two concepts—value and discarding—that in this context must be considered in relation to one another." *Id.* With regard to value, the California Supreme Court reasoned that "[t]he commonly understood meaning of 'waste' is something discarded 'as worthless or useless.'" *Id.* at 443 (quoting Am. Heritage Dict. (1985); Oxford English Dict. (2d ed. 1989)). The California Supreme Court went on:

> If the owner sells his property—that is, receives value for it—the property cannot be said to be worthless or useless in an economic sense and is thus not waste from the owner's perspective. Conversely, if the owner voluntarily disposes of the property without receiving compensation or other consideration in exchange— that is, throws it away—the obvious conclusion is that the property has no economic value to the owner.

*Id.* With regard to discarding, the California Supreme Court distinguished "discarding," which it defined as "throw[ing] away," from "disposing," which it defined as "transfer[ring] or part[ing] with, as by giving or selling." *Id.* (quoting Am. Heritage Dict. (2d college ed. 1982)). The

8

California Supreme Court then illustrated its interpretation of "waste" by way of example:

> Assume that, as in this case, there is an exclusive franchise. A property owner throws his recyclables into the receptacle provided by the franchisee and does so without receiving compensation. He has plainly discarded his property, and it is thus waste under the Act. Could he instead throw the property into the bin of a competing waste hauler without receiving compensation? No, because by disposing of the property without receiving compensation, he has discarded the property and thereby rendered it waste that is subject to the exclusive franchise. If, however, he is paid for the material by the franchisee's competitor, the owner has sold the property and thus has not discarded it, so it has not become waste.

*Id.* at 444.

In the instant case, Plaintiff "charges a service fee for the collection of mixed [construction and demolition debris] in debris boxes and roll-offs, to offset its costs of the labor and transportation to bring the [construction and demolition debris] from a construction site" to Plaintiff's materials recovery facility in San Jose. FAC ¶ 8. Thus, under the California Supreme Court's opinion in *Waste Management*, the construction and demolition debris that Plaintiff seeks a license to collect is solid waste, notwithstanding the fact that the debris is recyclable, because Plaintiff does not buy the debris from its owners. Accordingly, Plaintiff's business falls within the scope of Bay Counties' exclusive franchise, and so Sunnyvale denied Plaintiff's license application. In Plaintiff's view, this is the wrong result, both as a matter of policy and as a matter of statutory interpretation. *See* Opp. at 3, 13; FAC ¶¶ 5-16, 19-24. Plaintiff tries to frame this dispute as a constitutional issue.

As Plaintiff clearly states in its Opposition, its substantive due process theory focuses on the action of the California Supreme Court in deciding *Waste Management*. Plaintiff does *not* "dispute that a California city may grant an exclusive franchise for the collection of solid waste. [Plaintiff] does not assert that Sunnyvale acted unconstitutionally in enacting its solid waste ordinance." Opp. at 2 (emphasis removed). Plaintiff "does not contest that Sunnyvale correctly interprets how the California Supreme Court interpreted the statutory definition of 'solid waste' to include discarded material that one pays another to dispose." *Id.* at 2-3 (emphasis removed). Rather, Plaintiff contends that "the California Supreme Court acted unconstitutionally when it

adopted th[e] interpretation of solid waste [in *Waste Management*] as applied to Sunnyvale's denial of a permit." Opp. at 3. Indeed, Plaintiff plainly states that it was the "judicial branch [that] made the egregious decision" underpinning its substantive due process theory. *Id.* at 4; *see also id.* at 17 ("The [*Waste Management*] decision is an irrational misinterpretation of the state statutory definition of 'solid waste' as well as the intent of the Integrated Waste Management Act."). The heart of Plaintiff's argument appears to be that there is no rational basis for the California Supreme Court to adopt a test that turned, at least in part, on whether the owner of the material pays or is paid for disposal of the material. *See id.* at 13.

### 2. Analysis

#### a. Bringing a Substantive Due Process Claim Based on a State Court Decision

Outside the context of habeas corpus proceedings, there appears to be little precedent for the type of claim that Plaintiff brings here: a substantive due process claim brought in the lower federal courts based on a state supreme court interpretation of state law. The only case that Plaintiff cites for the viability of such a claim is *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 560 U.S. 702 (2010).[2] *See* Opp. at 7-12. In *Stop the Beach*, a plurality of the U.S. Supreme Court endorsed the existence of a judicial takings cause of action. 560 U.S. at 707, 713-15. In a partial concurrence, Justice Kennedy, joined by Justice Sotomayor, declined to endorse a judicial takings cause of action. *Id.* at 735-37 (Kennedy, J., concurring in part and concurring in the judgment). In Justice Kennedy's view, "[i]f a judicial decision, as opposed to an act of the executive or the legislature, eliminates an established property right, the judgment could be set aside as a deprivation of property without due process of law." *Id.* at 735. Justice Kennedy concluded that "[t]he Court would be on strong footing in ruling that a judicial decision that eliminates or substantially changes established property rights . . . is 'arbitrary or irrational' under the Due Process Clause." *Id.* at 737. The plurality disagreed

---

[2] The other cases that Plaintiff cites concern the viability of a judicial takings cause of action—not a substantive due process cause of action. Because Plaintiff explicitly abandoned its judicial takings theory, *see* Opp. at 2 ("[Plaintiff] must withdraw its Takings Clause claim under FRCP 11"), these cases do not help Plaintiff.

with Justice Kennedy's substantive due process approach, *see id.* at 721 (Scalia, J.) (plurality

opinion), and other federal courts have declined to rely on Justice Kennedy's concurrence, *see,*

*e.g.*, *Weigel v. Maryland*, 950 F. Supp. 2d 811, 836 n.61 (D. Md. 2013) ("Justice Kennedy's

concurrence in *Stop the Beach* is insufficient to render the Plaintiffs' claim cognizable."); *Watson*

*v. Lake County*, No. 5:09-cv-399, 2011 WL 13175635, at *6 n.2 (M.D. Fla. Feb. 23, 2011)

("Notwithstanding the fact that [Justice Kennedy's] opinion has no precedential value, it was also

roundly criticized by a plurality of the other justices. This Court refused to apply such an

unsettled rule to this case."). Plaintiff cites no case from the Ninth Circuit endorsing the

availability of a substantive due process claim based on a state court interpretation of state law,

and the Court is aware of none outside the habeas corpus context.

Indeed, such a cause of action would appear to raise "difficult procedural concerns" such

as "abstention and *Rooker-Feldman*, notice and immunity" that would be inherent in asking a

federal court to review a state court decision. Frederic Bloom, et al., *Suing Courts*, 79 U. CHI. L.

REV. 553, 595 (2012); *see also* Stacey L. Dogan et al., *Judicial Takings and Collateral Attack on*

*State Court Property Decisions*, 6 DUKE J. CONST. L. & PUB. POL'Y 107, 119-23 (opining that

federal courts should engage in review of state court decisions on state law "as infrequently as

possible"). "[O]nly state courts may authoritatively construe state statutes." *BMW of N. Am., Inc.*

*v. Gore*, 517 U.S. 559, 577 (1996). Normally, "[f]ederal courts will not review a state supreme

court's interpretation of its own statute unless that interpretation is clearly untenable and amounts

to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the

Constitution." *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) (citing, e.g. *Mullaney v.*

*Wilbur*, 421 U.S. 684, 691 & n.11 (1975)); *see also Demorest v. City Bank Farmers Tr. Co.*, 321

U.S. 36, 42 (1944) ("[I]f there is no evasion of the constitutional issue, . . . and the nonfederal

ground of decision has fair support, . . . this Court will not inquire whether the rule applied by the

state court is right or wrong, or substitute its own view of what should be deemed the better rule

for that of the state court." (quoting *Broad River Power Co. v. South Carolina*, 281 U.S. 537, 540

(1930)); *Vandevere v. Lloyd*, 644 F.3d 957, 963 n.4 (9th Cir. 2011) ("We also note that a federal

United States District Court
Northern District of California

court remains free to conclude that a state supreme court's purported definition of a property right really amounts to a subterfuge for removing a pre-existing, state-recognized property right."). "Something more than a mistaken construction on a close question is thus required in order to support federal intervention." *Dogan*, *supra*, at 123.

The Court need not decide whether such a cause of action is available, however, because even if it were available, Plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### b. Even if Such a Claim is Cognizable, Plaintiff's Claim Fails

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). "Substantive due process cases typically apply strict scrutiny in the case of a fundamental right and rational basis review in all other cases." *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008). "When a fundamental right is recognized, substantive due process forbids the infringement of that right 'at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Reno v. Flores*, 507 U.S. 292, 301-02 (1993) (emphasis omitted)). Fundamental interests that warrant strict scrutiny include the right to marry and the right to vote, among others. *See, e.g.*, *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627–28 (1969) (recognizing right to vote as fundamental right); *Loving v. Virginia*, 388 U.S. 1, 12 (1967) ("Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival.").

In cases not involving fundamental rights, where rational basis review applies, "the Court determines whether governmental action is so arbitrary that a rational basis for the action cannot even be conceived *post hoc*." *Witt*, 527 F.3d at 817. Rational basis review is a "highly deferential" standard. *Flynn v. Holder*, 684 F.3d 852, 858 (9th Cir. 2012). Indeed, "[w]hen executive action like a discrete permitting decision is at issue, only 'egregious official conduct can be said to be arbitrary in the constitutional sense': it must amount to an 'abuse of power' lacking any 'reasonable justification in the service of a legitimate governmental objective.'" *Shanks v.*

*Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  In other words, substantive due process is violated by "executive abuse of power . . . which shocks the conscience."  *Brittain*, 451 F.3d at 846; *accord Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010).  Even "[o]fficial decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary."  *Shanks*, 540 F.3d at 1089.  Plaintiff concedes that rational basis review applies here because no fundamental right is at stake.  Opp. at 3; *see also Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012) ("[G]overnment action that affects only economic interests does not implicate fundamental rights."  (internal quotation marks omitted)).

"To state a substantive due process claim," a plaintiff must typically "show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks*, 540 F.3d at 1087.  However, when the government action clearly falls short of constitutional arbitrariness, the Court need not reach whether Plaintiff possessed a property or liberty interest.  *See City of Cuyahoga Falls, Ohio v. Buckeye Comty. Hope Found.*, 538 U.S. 188, 198 (2003) ("We need not decide whether respondents possessed a property interest in the building permits, because the city engineer's refusal to issue the permits . . . in no sense constituted egregious or arbitrary government conduct.").  Such is the case here.

Assuming the availability of a substantive due process cause of action based on a state court interpretation of state law, Plaintiff has not alleged that the California Supreme Court's action in deciding *Waste Management* was sufficiently arbitrary and egregious to meet Plaintiff's "exceedingly high burden" of stating a viable substantive due process claim that would survive rational basis review.  *Matsuda v. City & Cty. of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008) (internal quotation marks omitted); *see Weigel*, 950 F. Supp. 2d at 835-36 ("Therefore, to the extent that any standard of review applies to substantive due process challenges to judicial decisions, it would be the rational basis standard.").

The Ninth Circuit's decision in *Shanks*, 540 F.3d 1082, is instructive.  In *Shanks*, property owners contended that the city of Spokane erroneously issued building permits that decreased the

value of their property. *Id.* at 1088. Specifically, the property owners alleged that Spokane violated several municipal ordinances when it issued defendants a permit to build a "box-like dormitory building" in a historic neighborhood. *Id.* at 1084-85. The district court ruled that the property owners had not stated a substantive due process claim, and the Ninth Circuit affirmed. *Id.* at 1086, 1089.

The Ninth Circuit in *Shanks* explained that "[t]he conduct [the plaintiffs] allege[d]—a routine, even if perhaps unwise or legally erroneous, executive decision to grant a third-party a building permit—falls short of being constitutionally arbitrary. There is no suggestion, for instance, of a sudden change in course, malice, bias, pretext or, indeed, anything more than a lack of due care on Spokane's part." *Id.* at 1089. The Ninth Circuit determined that it was "at least fairly debatable" that Spokane's action furthered a legitimate interest in facilitating residential housing in a residential neighborhood. *Id.* The Ninth Circuit then concluded, "When reviewing a substantive due process challenge, this suffices; our task is not to balance the public interest supporting the government action against the severity of the private deprivation." *Id.* (internal quotation marks omitted).

The reasoning in *Shanks* makes clear that Plaintiff's substantive due process theory here fails. Even assuming that Plaintiff's statutory interpretation arguments have some merit as a matter of California law, "[i]t is clearly established that not every state law violation gives rise to a substantive due process violation." *Schmidt v. Hoover*, No. C 08-5809 PJH, 2009 WL 1011715, at *5 (N.D. Cal. Apr. 15, 2009) (citing *Lewis*, 523 U.S. at 847-48; *Shanks*, 540 F.3d at 1089). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 846. Here, Plaintiff has alleged nothing more than "a routine, even if perhaps unwise or legally erroneous" statutory interpretation by the California Supreme Court. Plaintiff calls the California Supreme Court's decision "egregious," "arbitrary," and "irrational," FAC ¶ 36, Opp. at 4, 17, but Plaintiff pleads no facts to support these labels. Such "conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." *Adams*, 355 F.3d at 1183. Moreover, like in *Shanks*, here there is no suggestion of "a sudden change in course, malice, bias, [or] pretext" on

14

the part of the California Supreme Court. *Id.*

To the contrary, the California Supreme Court's decision appears to be nothing more than a reasoned decision interpreting a state statute using standard methods of statutory interpretation. In interpreting the term "waste," the majority decision in *Waste Management* relied on dictionary definitions of words not expressly defined by the Act—a standard, widely used method of statutory interpretation. *See, e.g.*, *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7-8 (2011) (Breyer, J.) (comparing dictionary definitions of the word "file"); *MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 225 (1994) (Scalia, J.) (canvassing dictionary definitions of the word "modify").

The California Supreme Court also considered whether various constructions of the term "waste" would be consistent with the California legislature's intent—another common method of statutory interpretation. Specifically, the California Supreme Court concluded that a construction of "waste" that did not address the value of the material discarded would be inconsistent with the Act's intent. The California Supreme Court explained that an interpretation solely based on the "discarding" element "might be read to mean that a property owner could decide unilaterally with whom he will discard his waste. If three competing waste handlers (the exclusive franchisee and two others) placed their respective receptacles at the owner's curbside, he could put his waste into whichever container he chooses." *Waste Management*, 869 P.2d at 4443. As the plaintiffs in *Waste Management* argued, such an approach relying solely on the "discarding" element "would eviscerate the Act because owners could discard all their property—recyclable and otherwise—as they see fit and thereby render an exclusive solid waste handling franchise a nullity as a practical matter." *Id.*

As this Court and other courts have explained, granting an exclusive franchise for solid waste handling is rationally related to legitimate government interests. *See* ECF No. 29 at 14-16 (noting that Bay Counties is more efficient at recycling construction and demolition debris than Plaintiff); *Waste Mgmt. of Alameda Cty., Inc. v. Biagini Waste Reduction Sys., Inc.*, 74 Cal. Rptr. 2d 676, 683 (Ct. App. 1998) (exclusive franchise allows municipality to "protect[] against the

15

hazards of indiscriminate or unsafe waste disposal"); *Waste Res. Techs. v. Dep't of Pub. Health*, 28 Cal. Rptr. 2d 422, 429 (Ct. App. 1994) (exclusive franchise results in lower costs for residents and increased efficiency in programs); *G. Fruge Junk Co. v. City of Oakland*, 637 F. Supp. 422, 425 (N.D. Cal. 1986) (exclusive franchise "rationally related to public health and environmental concerns because it facilitates efficient regulation of potentially hazardous activities"); *see also* Phillip O'Connell & Terri Esparza, *The Golden Dustman in the Golden State: Exclusive Contracts for Solid Waste Collection and Disposal in California*, 32 Urb. Law. 281, 287 (2000) (noting that multiple waste collectors means more large trucks in a city, which impacts traffic and residents' safety). As a result, the California Supreme Court's interpretation of the Act to preserve cities' ability to grant exclusive franchises was also rationally related to legitimate government interests.

Finally, the California Supreme Court's interpretation of the term "waste" is consistent with the decisions of other courts and commissions that have considered similar questions, which suggests the California Supreme Court's decision was not arbitrary, egregious, or clearly untenable. First, like in *Waste Management*, 869 P.2d at 442-44, other courts and commissions have looked to whether the actor discarding material paid or was paid to discard it. In 1965, the now-disbanded Interstate Commerce Commission considered whether the producers of demolition debris sold the debris or paid to have it removed as part of an inquiry into whether the debris constituted "property." *Pleasant Hill Bayshore Disposal, Inc. v. Chip-It Recycling, Inc.*, 110 Cal. Rptr. 2d 708, 718 (Ct. App. 2001) (citing *Joray Trucking Corp. Common Carrier Application*, 99 M.C.C. 109, 110 (1965)).

In 1991, the Virginia Supreme Court held that whether something is "waste" turned in part on whether it was "discarded material," which the Virginia Supreme Court said should be evaluated from the perspective of the actor discarding the material, not the actor collecting it. *Ticonderoga Farms, Inc. v. County of Loudoun*, 409 S.E.2d 446, 449 (Va. 1991). Applying reasoning similar to that of the California Supreme Court in *Waste Management*, the Virginia Supreme Court explained, "The materials are brought to [Ticonderoga Farms] by developers, builders, and others who have so strong an incentive to discard them that they are willing to pay

16

1  [Ticonderoga Farms] a fee to receive them. From that perspective, it is difficult to conceive a

2  clearer example of 'discarded material.'" *Id.*

3  Moreover, other federal courts have interpreted the federal Resources Conservation and

4  Recovery Act's definition of "solid waste" to include some recyclable materials. *See, e.g.*, *Owen*

5  *Elec. Steel Co. v. Browner*, 37 F.3d 146 (4th Cir. 1994) (holding that metal slag was a solid waste

6  even though it was later recycled); *United States v. Ilco*, 996 F.2d 1126 (11th Cir. 1993) (same for

7  batteries); *U.S. Brewers' Ass'n v. EPA*, 600 F.2d 974 (D.C. Cir. 1979) (upholding EPA regulation

8  of beverage container recycling despite claims that the bottles, until discarded, were not solid

9  waste). Even though different statutory definitions of "solid waste" were at play in these cases

10  and *Waste Management*, these cases undercut Plaintiff's argument that the California Supreme

11  Court's interpretation of "waste" is plainly irrational because it includes some recyclable material.

12  Thus, Plaintiff has failed to plead a plausible substantive due process claim because

13  Plaintiff has not put forward any facts that the California Supreme Court acted irrationally,

14  arbitrarily, or egregiously in deciding *Waste Management*. Rather, the most the Court can

15  conclude from Plaintiff's FAC is that *Waste Management* may be a "mistaken construction on a

16  close question." Dogan, *supra*, at 123. But more than that is required for a federal court to

17  intervene in a state court's construction of a state statute, and more than that is required to state a

18  substantive due process claim. *See id.*; *Shanks*, 540 F.3d at 1088 ("[O]nly 'egregious official

19  conduct can be said to be arbitrary in the constitutional sense': it must amount to an 'abuse of

20  power' lacking any 'reasonable justification in the service of a legitimate governmental

21  objective.'" (quoting *Lewis*, 523 U.S. at 846)). The fact that Plaintiff anticipates resistance to its

22  argument in the state courts and in the state legislature does not transform a dispute about the

23  correct interpretation of a state statute regulating solid waste handling into a constitutional issue.

24  *See* FAC ¶ 35; Opp. at 17 (arguing that national waste haulers have too much influence in the state

25  legislature and comparing Plaintiff to "plaintiffs in the 1940s civil rights cases where the Supreme

26  Court had interpreted the 14th Amendment to mean 'separate but equal' and Congressional

27  democrats from the South blocked all legislation to cure that evil").

28
17

Case No. 17-CV-00956-LHK
ORDER GRANTING MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1    Accordingly, the Court GRANTS the City's motion to dismiss the FAC's declaratory relief

2    cause of action to the extent it relies on a substantive due process theory of relief.

3         **c. Leave to Amend**

4    Plaintiff has abandoned its Equal Protection Clause, Commerce Clause, and Takings

5    Clause theories of declaratory relief, Opp. at 2, likely reflecting Plaintiff's own recognition that it

6    is unable to state a plausible claim under these theories.

7    In addition, Plaintiff has now been afforded two opportunities to state a viable declaratory

8    relief cause of action based on substantive due process, but it has been unable to do so. Plaintiff

9    first alleged in the original complaint that the City's permitting decisions violated its substantive

10    due process rights. *See* ECF No. 29 at 14-15; ECF No. 1 at ¶¶ 16, 24, 27. The Court ruled that

11    Plaintiff had failed to allege that the City's permitting decisions were arbitrary and capricious

12    because the City's permitting decisions were rationally related to legitimate government interests.

13    *Id.* at 15-16. Plaintiff did not attempt to remedy this deficiency in the FAC. Plaintiff did not

14    allege additional facts showing that the City's permitting decisions were "a sudden change in

15    course, malice, bias, pretext," or otherwise arbitrary or egregious. In fact, Plaintiff conceded in its

16    Opposition that it did not dispute the City's authority to grant an exclusive franchise for the

17    collection of solid waste, nor did it contest the City's interpretation of the *Waste Management*

18    decision. Opp. at 2.

19    Instead of pleading facts to show egregious action by the City, Plaintiff shifted its

20    substantive due process theory to focus on the California Supreme Court as the relevant

21    government actor. *See* FAC ¶ 36; Opp. at 2-3. Despite the instant Court's previous ruling that

22    Plaintiff must allege egregious government action to state a substantive due process claim, ECF

23    No. 29 at 13-16, Plaintiff pleaded only conclusory allegations that the California Supreme Court's

24    decision was arbitrary. *See* FAC ¶ 36. Plaintiff's Opposition similarly contains no specific

25    allegations of egregious government action beyond labeling the *Waste Management* decision

26    "egregious" and "irrational." Opp. at 2-4, 13-14, 17.

27    By failing to set forth any facts in the FAC to show egregious government action, Plaintiff

28

1    has "fail[ed] to cure deficiencies by amendments previously allowed." *Carvalho*, 629 F.3d 876,

2    892-93. As a result, it is within the Court's discretion to find that further amendments would be

3    futile and to decline to allow further amendments. Moreover, Plaintiff failed in its Opposition to

4    identify any facts that it could add if given leave to amend yet another time. This failure

5    reinforces the Court's conclusion that allowing further amendments would be futile.

6         Plaintiff may have a viable state law argument, but its constitutional arguments clearly fail.

7    Accordingly, the FAC is dismissed with prejudice as to the constitutional theories of declaratory

8    relief. *See Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017) (affirming dismissal with

9    prejudice of substantive due process claim on futility grounds); *Kay v. Placer County*, 219 F.

10   App'x 679, 682 (9th Cir. 2007) (unpublished) (affirming dismissal of constitutional causes of

11   action with prejudice because amendment would be futile and commenting that plaintiffs had

12   "sought to recast what are, at best, state-law claims into federal causes of action. Amendment will

13   not cure this fundamental flaw.").

14   **B.    State Law Theories**

15        Plaintiff's remaining theories of relief are based on state law. Plaintiff argues two state law

16   theories of relief, namely: (1) that the City uses the wrong definition of solid waste under

17   California law, and (2) that the City violated California Public Resources Code § 40059. FAC

18   ¶¶ 28-29, 31.

19        "[T]he Declaratory Judgment Act does not by itself confer federal subject-matter

20   jurisdiction." *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005).

21   Before declaratory relief may be granted, federal subject matter jurisdiction requirements must be

22   satisfied. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (requiring

23   independent subject matter jurisdiction on a declaratory relief cause of action).

24        A federal court may exercise supplemental jurisdiction over state law claims "that are so

25   related to claims in the action within [the court's] original jurisdiction that they form part of the

26   same case or controversy under Article III of the United States Constitution." 28 U.S.C.

27   § 1367(a). Conversely, a court may decline to exercise supplemental jurisdiction where it "has

28

dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Albingia Versicherungs A.G. v. Schenker Int'l, Inc.*, 344 F.3d 931, 937-38 (9th Cir. 2003) (as amended) (holding that Section 1367(c) grants federal courts the discretion to dismiss state law claims when all federal claims have been dismissed). In considering whether to retain supplemental jurisdiction, a court should consider factors such as "economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citations and internal quotation marks omitted). However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1553 n.4 (9th Cir. 1994) (emphasis omitted), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

Here, the factors of economy, convenience, fairness, and comity support dismissal of Plaintiff's remaining state law theories of relief. This case is still at the pleading stage, and no discovery has taken place. Federal judicial resources are conserved by dismissing the state law theories of relief at this stage. The Court finds that dismissal promotes comity as it enables California courts to interpret questions of state law. The fact that this case is brought under the federal declaratory judgment act does not affect this result. *See Anbar v. Deutsche Bank Nat'l Tr. Co.*, No. 13cv1318-WQH-RBB, 2013 WL 5937274, at *3 (S.D. Cal. Nov. 4, 2013) (declining supplemental jurisdiction on declaratory judgment cause of action).

Under similar circumstances, in *Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178 (1st Cir. 1999), after the First Circuit found that the defendant's exclusive franchise agreement was not prohibited under the Takings Clause or the dormant Commerce Clause, the First Circuit discussed a claim that the exclusive franchise agreement was invalid under the town charter. *Id.* at 192. The First Circuit noted that the district court "should not have ventured to adjudicate the town charter claim," and that declining supplemental jurisdiction was the "option of choice." *Id.* The Court finds that similar logic applies to Plaintiff's state law theories of relief here. For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law theories

Case No. 17-CV-00956-LHK
ORDER GRANTING MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

United States District Court
Northern District of California

of relief. Moreover, with the dismissal with prejudice of the constitutional basis for Plaintiff's declaratory relief cause of action, this Court no longer has federal question jurisdiction over this case. *See Nationwide Mut. Ins. Co.*, 408 F.3d at 1161 ("[T]he Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction."). The Court also lacks diversity jurisdiction because both parties are citizens of California. Thus, the Court doubts whether it even has jurisdiction to continue to preside over this case.

Accordingly, the Court GRANTS without prejudice the City's motion to dismiss the FAC's declaratory relief cause of action to the extent it is based on Plaintiff's state law theories of relief. Plaintiff may refile in state court.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS the City's Motion to Dismiss the First Amended Complaint, which consists of one declaratory relief cause of action. This dismissal is with prejudice as to the constitutional theories, and without prejudice as to the state law theories, of Plaintiff's declaratory relief cause of action.

**IT IS SO ORDERED.**

Dated: November 9, 2017

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No. 17-CV-00956-LHK
ORDER GRANTING MOTION TO DISMISS THE FIRST AMENDED COMPLAINT